UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DR. NOAM LAZEBNIK, M.D., on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>   v.<br><br>APPLE, INC.,<br><br>         Defendant. | Case No.: 5:13-CV-04145-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**[Re: Docket No. 18]** |

Plaintiff Noam Lazebnik, M.D. ("Plaintiff"), an individual, has brought this putative class action against Apple, Inc. ("Defendant"). Presently before the Court is Defendant's Motion for Judgment on the Pleadings. The Court found this matter appropriate for decision without oral argument pursuant to Local Civil Rule 7–1(b) and previously vacated the corresponding hearing date. For the reasons explained below, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

1

## I. BACKGROUND

The allegations contained in this section are taken largely from the Complaint, which was filed by Plaintiff on September 6, 2013. See Compl., Docket Item No. 1.

AMC Networks, Inc. ("AMC") produced and marketed the television program "Breaking Bad," and sold it through Defendant's iTunes platform. Id. ¶ 2. From the time Season 5 of Breaking Bad was first announced, it was referred to as the "Final Season" and was slated to include 16 episodes. Id. ¶ 3.

On or around the time the first episode of Season 5 became available on iTunes, Defendant began selling a "Season Pass" for the program. Id. ¶ 9. Customers would pay a one-time charge, in this case $21.99 for high definition ("HD") and $13.99 for standard definition ("SD"), and in exchange they were promised: "[t]his Season Pass includes all current and future episodes of Breaking Bad, Season 5." Id. ¶ 10. The iTunes informational page regarding the "Season Pass" option explained that "[p]urchasing a Season Pass gets you every episode in that season and at a better price than if you were to purchase it one at a time." Id. ¶ 11.

However, when the second half of Season 5 started to air on AMC and became available on iTunes in early August of 2013, iTunes customers who had purchased a Season Pass did not have access to the new episodes. Id. ¶ 13. Defendant deemed the new episodes a "Final Season" that it did not consider part of Season 5, and expected individuals who had already purchased Season 5 to spend another $22.99 or $14.99 in order to access it. Id. ¶ 15.

On or about September 20, 2012, Plaintiff purchased a "Season Pass" for Season 5 of Breaking Bad on Apple's iTunes service. Id. ¶ 25. The purchase was made by Plaintiff, Dr. Noam Lazebnik. Id. ¶ 26. The purchase was paid for using a credit card belonging to Plaintiff, but his son-in-law, Jeremy Tor ("Mr. Tor"), actually completed the transaction, using his iTunes account. Id. ¶ 27.

When he purchased his "Season Pass," Plaintiff and Mr. Tor believed that his purchase would include all "current and future" episodes of Season 5. Id. ¶ 29. Mr. Tor saw and specifically relied upon Apple's promise that the "Season Pass" would include all current and

future episodes of Season 5. Id. Plaintiff and Mr. Tor watched the first eight episodes of Season 5 and waited for the second half of the season to become available. Id. ¶ 32.

However, when the second half of Season 5 first started to air on AMC and become available on iTunes, Plaintiff and Mr. Tor realized that the "future episodes" of Season 5 were not being provided to him. Id. ¶ 33.

Plaintiff and Mr. Tor purchased Episode 9 of Season 5 for $2.99. Id. ¶ 35. Mr. Tor later reached out to Apple and indicated that he felt Plaintiff had not received what he had paid for and that Plaintiff should be given access to the second half of Season 5. Id. ¶ 36. Apple informed him that it considered the second half of Season 5 to be a different season, which it refers to as the "Final Season," and which it was then selling on iTunes for an additional $22.99. Id. ¶ 37. Apple refunded the $2.99 Plaintiff had spent to purchase Episode 9 of Season 5, but it told Mr. Tor that if Plaintiff wanted to watch the remaining seven episodes, he would have to pay for them. Id. ¶ 38.

## II. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed -- but early enough not to delay trial." Judgment on the pleadings is proper when "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)). The standard for a Rule 12(c) motion is essentially the same as that for a Rule 12(b)(6) motion. Chavez, 683 F.3d at 1108. Thus, a court must presume all facts alleged in the complaint as true, and determine whether the complaint shows plausible entitlement to a legal remedy. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007) (discussing the standard for dismissal under Rule 12(b)(6)). A court need not accept the truth of any legal conclusions cast in the form of factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted) (discussing the standard for dismissal under Rule 12(b)(6)).

**III. DISCUSSION**

Plaintiff alleges three causes of action against Defendant: 1) breach of contract; 2) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; and 3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.

Defendant seeks dismissal of the entire Complaint on standing grounds, and advances arguments against each of Plaintiff's individual claims.

**a. Standing**

"To satisfy Article III, a plaintiff must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." In re Google, Inc. Privacy Policy Litig., 2013 WL 6248499, at *3 (N.D. Cal. Dec. 3, 2013); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). And in class actions, "the named representatives must allege and show that they personally have been injured," in order to sustain a cause of action. Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting Pence v. Andrus, 586 F.2d 733, 736-37 (9th Cir. 1978)).

In addition to Article III standing, a plaintiff must establish statutory standing to bring claims under the UCL or CLRA. See Cal. Bus. & Prof. Code §§ 17204, 17535. These statutes require the plaintiff to show that he or she has suffered an "economic injury." See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323 (2011). The economic injury requirement is "substantially narrower than federal standing . . . which may be predicated on a broader range of injuries." Id. at 324.

Courts have held that a plaintiff is injured and has suffered a cognizable and ascertainable loss when he receives less than what he was promised. See e.g., Ramirez v. STi Prepaid LLC, 644 F. Supp. 2d 496, 501 (D.N.J. 2009). "As long as plaintiffs allege a legally cognizable loss under the 'benefit of the bargain' or some other legal theory, they have standing." In re Toyota Motor

4

Case No.: 5:13-CV-04145-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Corp. Unintended Acceleration Mktg. Sales Practices, and Prod. Liab. Litig., 754 F. Supp. 2d 1145, 1164 (C.D. Cal. 2010).

Here, to satisfy the standing requirement, Plaintiff alleges that when he purchased his Season Pass, he received half of Season 5 of Breaking Bad (8 episodes), when Defendant had allegedly promised that the Season Pass would include all current and future episodes of Season 5 (16 episodes). Defendant sets forth the following arguments.

### i. Whether Plaintiff properly pleads reliance

Defendant argues that Plaintiff lacks standing to pursue this action because, as the Complaint alleges, Plaintiff's purchase of the Season Pass for Season 5 of Breaking Bad was not completed solely by Plaintiff. Rather, although the purchase was paid for using a credit card belonging to Plaintiff, Plaintiff's son-in-law, Mr. Tor, was the individual who actually performed the transaction, using Mr. Tor's iTunes account. Furthermore, the Complaint alleges that it was Mr. Tor, not Plaintiff, who read and relied upon Defendant's alleged promise (although Mr. Tor related Defendant's promise to Plaintiff prior to the purchase). As a result, Defendant argues that Plaintiff fails to sufficiently plead reliance on Defendant's alleged misrepresentations.

As Defendant points out, merely alleging exposure to a statement is insufficient; "[t]he plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations. Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 184 (2003). Plaintiff falls somewhat short of this requirement. He alleges that, prior to the purchase, Mr. Tor related to Plaintiff Defendant's promise on the iTunes site that the Season Pass would include all of Season 5. Plaintiff alleges that it was Mr. Tor, not Plaintiff, who read and relied on Defendant's statement. However, Plaintiff never alleges that, in his reliance on Mr. Tor's communication of Defendant's statement, Plaintiff affirmatively allowed or instructed Mr. Tor to execute the purchase.

Nevertheless, the Complaint is only required to have "facial plausibility," and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

5

556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. It is reasonable to infer that Plaintiff gave permission to Mr. Tor to use his credit card to make the purchase in reliance on Defendant's statement, particularly because the Complaint alleges that Mr. Tor related to Plaintiff Defendant's promise prior to the purchase.

Next, Defendant argues that having a third party purportedly describe to the plaintiff a statement made by the defendant does not show that the plaintiff was actually "exposed" to (and therefore could reasonably rely upon) a statement by the defendant. See Geernaert v. Mitchell, 31 Cal. App. 4th 601, 605-06, 608 (1995) (a plaintiff can only rely on statements transmitted by a third party where the defendant intended or had reason to expect that the statement would be transmitted to the plaintiff). However, this appears to be a question of fact not suitable for adjudication at this stage in the litigation. A jury could reasonably find that Defendant had reason to expect that its representations would be transmitted to others, particularly in the case of statements made to a wide audience such as iTunes users.

"A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009) (internal citations omitted). Plaintiff alleges that both he and Mr. Tor believed that the purchase of the Season Pass would include all of Season 5. Furthermore, because the purchase was made with Plaintiff's credit card, Plaintiff has allegedly suffered an economic injury-in-fact. The injury is "fairly traceable" to Defendant's conduct because it was Defendant's statement that allegedly induced Plaintiff and Mr. Tor to make the purchase.

### ii. Defendant's remaining arguments regarding standing

Defendant also cites to a number of "gift" cases, arguing that Plaintiff lost a property interest in the funds that were used to purchase the Season Pass by gifting them to Mr. Tor. However, nothing in the Complaint suggests that Plaintiff intended to gift the funds to Mr. Tor.

6

Case No.: 5:13-CV-04145-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Rather, the Complaint alleges that Plaintiff and Mr. Tor made the purchase together and used the Season Pass together.

Defendant also argues that Plaintiff fails to establish standing based on third-party prudential standing. "Even where plaintiffs meet the bare minimum of the Article III case or controversy requirement, [courts] typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff." McCollum v. Cal. Dep't of Corr. & Rehab., 647 F.3d 870, 878 (9th Cir. 2011) (citation omitted). However, because Plaintiff sufficiently alleges that he suffered an injury-in-fact as a result of Defendant's conduct, Plaintiff's action asserts rights that properly belong to him.

Based on the foregoing, Plaintiff has alleged facts sufficient to establish standing under both Article III and the UCL.

### b. Individual claims

Apple's Motion also argues that Plaintiff's individual claims should be dismissed on the merits.

### i. Breach of contract

Under California law, to sustain a claim for breach of contract Plaintiff must prove (1) the formation of a contract between Plaintiff and Defendant; (2) substantial performance by Plaintiff; (3) Defendant's failure to perform; and (4) resulting damages. Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). Defendant argues that, if any contract existed, it was between Defendant and Mr. Tor, not Defendant and Plaintiff. The Court agrees.

Plaintiff only points to the allegation that Plaintiff's credit card was used to purchase the Season Pass. However, Plaintiff "has produced no [allegation] demonstrating the formation of any contract—no evidence of offer, acceptance, or consideration, no evidence from which the terms of any contract could be determined." Hecimovich v. Encinal Sch. Parent Teacher Org., 203 Cal. App. 4th 450, 475 (2012).

Accordingly, Defendant's Motion is GRANTED as to Plaintiff's claim for breach of contract.

7

### ii. CLRA

The CLRA imposes liability for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Such unlawful conduct includes "representing that goods or services have ... characteristics[,] ... uses, benefits, or qualities which they do not have," "representing that goods or services are of a particular standard, quality, or grade ... if they are of another," "advertising goods or services with intent not to sell them as advertised," and "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Id. §§ 1170(a)(5), (7), (9) and (16). The CLRA defines "goods" as

> tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property.

Cal. Civ.Code § 1761(a).

The parties dispute whether the Season Pass is a "good" within the meaning of the CLRA.[1] As Defendant points out, some federal courts have excluded software from the reach of the CLRA. See, e.g. In re iPhone 4S Consumer Litig., 2013 WL 3829653, at *13 (N.D. Cal. July 23, 2013) (collecting cases); Ferrington v. McAfee, Inc., 2010 WL 3910169, at *19 (N.D. Cal. Oct. 5, 2010) ("The CLRA's express limitation of goods to 'tangible chattels' must be given meaning, and current California law suggests that these words exclude software from the Act's coverage.")

Plaintiff points to Cullen v. Netflix, Inc., 880 F. Supp. 2d 1017 (N.D. Cal. 2012) and Cullen v. Netflix, Inc., 2013 WL 140103 (N.D. Cal. Jan. 10, 2013), two orders from this Court granting a defendant's motion to dismiss. In Cullen, the Court considered a claim regarding representations made by Netflix in connection with the closed-captioning of its streaming video service. Plaintiff interprets these decisions as applying the CLRA to streaming video content and that the Court

---

[1] Plaintiff does not argue that the Season Pass is a "service."

1  "assumed" that streaming video is a "good" within the meaning of the CLRA. However, the

2  question of whether streaming video is a "good" was never decided in Cullen. Rather, the Court's

3  decision in both Cullen orders was regarding whether the representations that Netflix had made

4  regarding its streaming video product were deceptive. Because the Court found that the

5  representations were not deceptive, it never reached the issue of whether streaming video is a

6  "good" under the CLRA. "Questions which merely lurk in the record, neither brought to the

7  attention of the court nor ruled upon, are not to be considered as having been so decided as to

8  constitute precedents." Webster v. Fall, 266 U.S. 507, 511 (1925).

9  Next, Plaintiff points to In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,

10  2014 WL 223677 (S.D. Cal. Jan. 21, 2014), in which the court denied a motion to dismiss a CLRA

11  claim involving rights contained in an agreement allowing access to online content via Sony's

12  Playstation Network. However, as Defendant correctly points out, this case actually supports

13  Defendant's position. In Sony, the court had previously granted Sony's motion to dismiss when

14  plaintiffs' CLRA claim "was specifically linked to Plaintiffs' registration for the [Playstation

15  Network], which is neither a good nor a service under the CLRA." 2014 WL 223677, at *35.

16  Only when the plaintiffs amended their complaint to tie the alleged misrepresentations to the

17  purchase of the physical gaming console did the court find plaintiffs had adequately stated a CLRA

18  claim. Id.

19  The Court finds that the Season Pass is not a "good" within the meaning of the CLRA

20  because, as Plaintiff acknowledges, it is either software or a license, not a "tangible chattel."

21  Accordingly, Defendant's Motion is GRANTED as to Plaintiff's CLRA claim.

### iii.  UCL

23  The UCL prohibits "unlawful, unfair or fraudulent" business acts or practices. Cal. Bus. &

24  Prof. Code § 17200. The false advertising law prohibits any "unfair, deceptive, untrue, or

25  misleading advertising." Cal. Bus. and Prof. Code § 17500. "'[A]ny violation of the false

26  advertising law . . . necessarily violates' the [UCL]." Kasky v. Nike, Inc., 27 Cal. 4th 939, 950

9
Case No.: 5:13-CV-04145-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   (2002) (quoting Comm. on Children's Television, Inc. v. General Foods Corp., 35 Cal. 3d 197, 210

2   (1983)).

3         The California Supreme Court has recognized "that these laws prohibit 'not only

4   advertising which is false, but also advertising which[,] although true, is either actually misleading

5   or which has a capacity, likelihood or tendency to deceive or confuse the public.'" Kasky, 27 Cal.

6   4th at 951 (quoting Leoni v. State Bar, 39 Cal. 3d 609, 626 (1985)).  The parties' dispute centers

7   around whether Defendant's statements regarding the sale of Season 5 of Breaking Bad were

8   "likely to deceive" the public.

9         Defendant contends that Plaintiff has not alleged that Defendant made any promises that

10  purchasers of the Season Five Season Pass would be entitled to "all 16 episodes" of the Season.

11  Plaintiff has pled that Defendant asserted on the iTunes page for the Season Five Season Pass that

12  "[p]urchasing a Season Pass gets you every episode in that season and at a better price than if you

13  were to purchase it one at a time."  However, Defendant argues that, because the language of the

14  iTunes page never stated explicitly that there would be 16 episodes in Season Five of Breaking

15  Bad, a customer could draw no conclusions as to how many episodes he or she was purchasing

16  without referencing "various statements made by AMC and by various individuals associated with

17  Breaking Bad."  Defendant further argues that, regardless of how AMC chose to market the final

18  16 episodes of Breaking Bad, a reasonable consumer would not believe that he would receive 16

19  episodes for the purchase price of $21.99.

20        Notwithstanding Defendant's arguments, however, "whether a business practice is

21  deceptive will usually be a question of fact not appropriate for decision on demurrer." Williams v.

22  Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted).  This decision is rarely

23  made as a matter of law.  For instance, in Freeman v. Time, Inc., 68 F.3d 285 (9th Cir. 1995), the

24  plaintiff challenged a mailer that suggested the plaintiff had won a million dollar sweepstakes.

25  There, the mailer explicitly stated multiple times that the plaintiff would only win the prize if he

26  had the winning sweepstakes number.  Thus, it was not necessary to evaluate additional evidence

27  regarding whether the advertising was deceptive, since the advertisement itself made it impossible

28

10

Case No.: 5:13-CV-04145-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS

for the plaintiff to prove that a reasonable consumer was likely to be deceived.  In Rice v. Fox Broad. Co., 330 F.3d 1170, 1181 (9th Cir. 2003), false statements on a videotape cover were found immaterial as a matter of law because videotape cover could not be observed by any potential consumer and therefore could not influence the purchasing decision.

The facts of the instant case do not amount to the rare situation in which it is appropriate to find the challenged practice, as a matter of law, unlikely to deceive a reasonable consumer.  The challenged statements in the instant case could be viewed by any consumer with an iTunes account prior to purchase.  Defendant's advertisement did not include any explicit statement that the Season Pass would provide consumers with 8 episodes rather than 16.  Instead, the Complaint alleges that Defendant advertised the Season Pass as including "every episode in [Season 5] and at a better price than if you were to purchase it one at a time."  Compl. ¶ 11.  Furthermore, the Complaint cites a number of examples of consumer complaints posted on a discussion board on Defendant's website in which consumers appear to have believed their Season Pass purchase would include all 16 episodes of Season 5.  See Compl. ¶ 15, n.1.

Finally, Defendant argues that it is AMC, not Defendant, who is responsible for Plaintiff's injury, because it was AMC's decision to market the last sixteen episodes of Breaking Bad as Season 5.  However, the test is whether Defendant's representations were likely to deceive a reasonable consumer.  Whether the likelihood of deception arose because of AMC's conduct or Defendant's conduct is not relevant to this inquiry, and Defendant cites no case that states otherwise.  The UCL does not impose a scienter requirement.

Accordingly, Defendant's Motion is DENIED as to Plaintiff's UCL claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.  The Motion is granted as to the breach of contract claim and the CLRA claim (Counts I and II).  The Motion is denied as to the UCL claim (Count III).

**IT IS SO ORDERED**

Dated: August 29, 2014



EDWARD J. DAVILA
United States District Judge